987 P.2d 297

David REYES, Claimant–Appellant,

v.

IDAHO SUPREME POTATOES, Employer and Industrial Indemnity Company, Surety, Defendants–Respondents.

No. 24554.

Supreme Court of Idaho.
Pocatello, May 1999 Term.

Aug. 27, 1999.

Jenkins Law Office, Chtd., Idaho Falls, for appellant. Gordon W. Jenkins argued.

Quane, Smith, Idaho Falls, for respondents. Donald F. Carey argued.

SCHROEDER, Justice

David Reyes (Reyes) appeals the decision by the Industrial Commission (Commission) denying him worker's compensation benefits against the employer, Idaho Supreme Potatoes, and its surety, Industrial Indemnity Company (collectively the Employer or Idaho Supreme). The Commission denied Reyes worker's compensation benefits on the basis that Reyes failed to prove that his left inguinal hernia was caused by an accident that occurred during the course of his employment. The Court affirms the decision of the Commission.

## I.

### BACKGROUND AND PRIOR PROCEEDINGS

Reyes began working for Idaho Supreme at its potato flakes manufacturing operation in Firth, Idaho, on November 10, 1993. On August 24, 1994, he injured his lower back while shoveling potato mash. He testified that he did not feel any pain in his abdomen concurrent with the back injury.

On March 7, 1995, Reyes discovered a lump on his lower left abdomen, which he reported to Dr. Gary Walker (during his previously scheduled appointment) that afternoon. Dr. Walker testified that Reyes told him that the protrusion in his left inguinal area had been present for approximately two weeks. Dr. Walker further testified that Reyes told him the protrusion had occurred at work while doing overhead shoveling. Suspecting a left inguinal hernia, Dr. Walker referred Reyes to a surgeon. The Employer sent Reyes to Dr. Andrew Bradbury who confirmed the diagnosis. Reyes then saw Dr. Dale Mosdell, a surgeon, on March 13 and 15, 1995.

The Employer called a meeting with Reyes on March 16, 1995. Pamela K. Vouk (Vouk), the Human Resources Manager, Ralph E. West (West), the assistant Human Resources Manager, Lonnie Swift (Swift), the head flaker operator, and Scott J. Staples (Staples), a shift foreman, were in attendance at the meeting. The purpose of the meeting was ostensibly to complete a Notice of Injury and Claim for Benefits with respect to Reyes' hernia. The claim form was filled out by West who testified that Reyes was unable to attribute his hernia to a specific incident at work. Staples testified that Reyes was unable to identify either a specific day or incident when the hernia had occurred. Vouk testified that Reyes pulled out a calendar and told them to pick a date out of a two-week period. West believed that the two-week period was in January of 1995. West further testified that Reyes had told him on March 8, 1995, that he did not know how he got his hernia.

Dr. Mosdell performed laparoscopic surgery to repair the hernia on March 17, 1995. The hernia was a pantaloon type, involving both a direct and indirect hernia. According to Dr. Mosdell, an indirect hernia occurs in many males, while the direct hernia is classically associated with lifting.

Dr. Mosdell saw Reyes three times for follow-up treatment and released him to return to work effective April 13, 1995, with a seventy-five to one hundred-pound lifting restriction. Dr. Mosdell opined in his November 14, 1995, deposition that "the hernia that [Reyes] suffered was related to lifting and the initial accident that he sustained and the back injury from work." However, Dr. Mosdell acknowledged that he could not tell whether the hernia was a result of the August 1994 shoveling incident or some other lifting event.

On January 15, 1996, Reyes saw Dr. Mosdell again, complaining of the same type of pain that was associated with the initial hernia. He underwent an ultrasound to determine whether there was a hernia. The ultrasound revealed that he had a recurrent left hernia, and Dr. Mosdell performed an external herniorrhaphy to repair the hernia. Dr. Mosdell released Reyes back to work on April 24, 1996, with a forty-pound lifting restriction.

Reyes filed three different complaints with the Commission regarding his injury: (1) one on June 28, 1995; (2) another on April 2, 1996, alleging a work-related injury on January 15, 1996—the recurrent hernia;[1] and (3) another on August 14, 1996, alleging an injury on August 24, 1994, the same day on which he injured his back while shoveling potato mash. The complaints were consolidated on September 6, 1996.

The Referee who presided over the hearing resigned her position with the Commission prior to the Commission making a decision. The parties stipulated that the record be submitted to another Referee, who proposed Findings of Fact and Conclusions of Law denying compensation for the hernias. The Commission adopted the Referee's Findings of Fact and Conclusions of Law and denied Reyes' motion to reconsider its decision. Reyes appealed to this Court.

## II.

### STANDARD OF REVIEW

■ "In any review of a decision by the Industrial Commission, the Court will review questions of fact only to determine whether substantial and competent evidence supports the Commission's findings and will exercise free review over questions of law." *Ogden v. Thompson*, 128 Idaho 87, 88, 910 P.2d 759, 760 (1996) (citations omitted).

## III.

### REYES DID NOT MEET HIS BURDEN OF ESTABLISHING A CAUSAL CONNECTION BETWEEN HIS INJURY AND HIS EMPLOYMENT.

■ "A claimant has the burden of proving a probable, not merely a possible, causal connection between the employment and the injury or disease." *Beardsley v. Idaho Forest Indus.*, 127 Idaho 404, 406, 901 P.2d 511, 513 (1995). The Commission concluded that

1. Reyes acknowledges that with respect to the second hernia of January 1996, "Dr. Mosdell's testimony fails to support causation."

[the] Claimant's evidence fail[ed] to establish the requisite causal relationship between his hernia and an accident occurring in the course of his employment. First, Claimant cannot reasonably locate a time when and place where an accident occurred. At different times, Claimant has cited the August 24, 1994, shoveling incident, his November–December, 1994, physical therapy, and a two week period of lifting during January, 1995, as the cause of the hernia which appeared on March 7, 1995. This is a five month window which ended well over a month before Claimant discovered the hernia. Second, while [Dr. Mosdell] opined the mechanisms of hernia development were consistent with Claimant's reported history of lifting at work, and his physical therapy, Dr. Mosdell never directly associated Claimant's hernia with a specific event. And finally, Dr. Mosdell acknowledged [that] Claimant's reported history of constipation could have been a factor in the development of his hernia.

Reyes argues that the Court should reverse the Commission because his own testimony on causality was merely a lay opinion with respect to a medical condition that should be disregarded under the rulings of this Court. He maintains that Dr. Mosdell's unrebutted expert testimony established the cause of injury and linked that injury to the accident of August 24, 1994, the date of his back injury.

■ There is substantial and competent evidence to support the Commission's finding that Dr. Mosdell did not directly associate Reyes' hernia with a specific lifting event and that something other than lifting could have been a factor in the development of the hernia. Stated another way, there is substantial and competent evidence to sustain the Commission's finding that Dr. Mosdell did not establish causation.

Dr. Mosdell stated that, in his opinion, "the hernia that [Reyes] suffered was related to lifting and the initial accident that he sustained and the back injury from work," but this statement is undermined by Dr. Mosdell's further testimony. Dr. Mosdell was under the misunderstanding that the back injury occurred shortly before he treated Reyes for the hernia in March 1995—per-

haps a week to two months. When Dr. Mosdell was made aware that the back injury occurred on August 24, 1994, he was equivocal with respect to his opinions regarding causation:

Q ... My question is do you know whether or not [the hernia is] related to the same lifting event as distinct from some other lifting event at a subsequent time?

A No, there's no way for me to know that, and I think that's what it says in my letter that I sent.

Q Okay. So if you don't know what lifting event actually caused the hernia then you don't know what day he suffered the hernia, what time he suffered the hernia, or what activity he was engaged in at the time he suffered the hernia, would those be correct statements?

A Not being there at the time, you would be correct. I wouldn't—there would be no way for me to know that.

Dr. Mosdell remarked in the letter referred to in the above quote that "[a]t surgery there was no conclusive evidence that the hernia came from heavy lifting and could be attributed only to that." In his second deposition, Dr. Mosdell was similarly ambivalent regarding causation:

Q ... One of the questions that Mr. Dewey asked you concerned causation, the causal relationship between the work environment and Mr. Reyes's original hernia that was diagnosed in March of 1995. At that time you indicated that there was some basis for concluding that it was causally related to the work, given the proximity in time to the back injury. And, if I recall, you thought that the back injury occurred within a couple of weeks preceding your examination of Mr. Reyes. Okay. Go ahead.

A I think I specified that the causation was not specifically due to the back injury but that the mechanism was consistent and what the body goes through as part of the rehabilitation program after a back injury, physical therapy and stuff. Okay. That's what I meant to say if that's not clear.

■ Causation is generally a question of fact. *See generally Walker v. American Cyanamid Co.*, 130 Idaho 824, 831, 948 P.2d 1123, 1130 (1997); *Earl v. Cryovac*, 115 Ida-

ho 1087, 1090, 772 P.2d 725, 728 (1989). This Court will not disturb the Commission's finding on causation when there is substantial and competent evidence to support it. *See Beardsley,* 127 Idaho at 406, 901 P.2d at 513. The Commission's determination that Reyes did not meet his burden of establishing a causal connection between his injury and his employment is supported by the evidence.

## IV.

### CONCLUSION

The Commission's order of October 6, 1997, denying Reyes' claim for worker's compensation benefits is affirmed. Costs are awarded to the respondents.

Chief Justice TROUT and Justices SILAK, WALTERS and KIDWELL, CONCUR.