# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34333

BOISE TOWER ASSOCIATES, LLC, a
Washington limited liability company,

    Plaintiff-Appellant-Cross Respondent,

v.

TIMOTHY J. HOGLAND, an individual
acting under color of state law, and THE
CITY OF BOISE, an Idaho
municipality,

    Defendants-Respondents-Cross
    Appellants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2009 Term

2009 Opinion No. 106

Filed: August 24, 2009

Stephen W. Kenyon, Clerk

---

Appeal from the Fourth Judicial District of the State of Idaho, Ada County.
Hon. Darla Williamson, District Judge.

The district court order granting summary judgment is <u>affirmed in part and vacated in part and the case is remanded for further proceedings</u>. Costs on appeal are awarded to respondents.

Rossman Law Group, PLLC, Boise, for appellant. Eric Rossman argued.

Anderson Julian & Hull, LLP and Scott Muir, Boise, for respondent. Phillip Collaer argued.

---

W. JONES, Justice

## NATURE OF CASE

This appeal arises out of a failed condominium tower project that Boise Tower Associates (BTA) intended to build in downtown Boise, Idaho. BTA filed a lawsuit against Timothy Hogland (Hogland) and the City of Boise, alleging constitutional violations and other causes of action stemming from the mistaken miscalculation of BTA's building permit expiration

date. The district court granted summary judgment in favor of Hogland and the City of Boise. BTA brought this appeal. We affirm in part and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

The facts of this case are largely undisputed by the parties. On November 27, 1998, BTA submitted an application to the Boise Planning and Development Services Department (PDS) for a building permit to construct the Boise Tower Project (the Project). Hogland, Director of PDS, approved BTA's application and issued the permit on May 3, 2000.

Under the applicable building regulations found in the 1994 Uniform Building Code (UBC), the permit would expire if work authorized by such permit was suspended or abandoned for a period of 180 days. For two years minimal work was performed on the Project. The last date that work was performed was on May 15, 2002, when concrete was poured for the foundation. Accordingly, BTA's permit was set to expire on November 11, 2002, which would have been 180 days after the last day work was performed on the Project. However, PDS's records incorrectly indicated that May 3, 2002 was the last date that BTA had performed work on the Project. According to PDS, the permit was therefore set to expire on November 3, 2002.

On November 7, 2002, Hogland received a letter from M.A. Mortenson, BTA's construction contractor, notifying PDS that work would commence that day. Under the mistaken notion that the permit expired on November 3, 2002, an inspector for the City of Boise issued a stop-work order to BTA and notified it that the site was to remain as-is until Hogland could meet with BTA and agree on a course of action.

On November 13, 2002, Hogland met with representatives from BTA and Mortensen to discuss a course of action. Rick Peterson (Peterson), the managing member of BTA, tried to convince Hogland that the permit had not yet expired, but Peterson did not provide Hogland with any supporting evidence that BTA had worked on the Project on May 15, 2002. At that meeting, Hogland told BTA that to move forward and continue work under the permit BTA would have to enter into a written stipulation agreement. One condition of the stipulation agreement required BTA to provide a letter from a lending institution indicating a commitment of full financing within 60 days from the date of the agreement or the permit would be deemed expired.

BTA alleges that Hogland told Peterson if BTA did not sign the stipulation agreement that day, Hogland would tell the Boise City Council at their meeting that night that BTA's permit had expired. Peterson protested, arguing that his attorney advised him not to sign the stipulation

agreement. However, BTA believed that if Hogland publicly announced that the permit was expired, it would jeopardize financing and lead to the demise of the Project. On November 15, 2002, Hogland received a letter from BTA stating that Peterson had signed the stipulation agreement. Thereafter, Peterson and his attorney suggested revisions to the agreement. The agreement was revised and signed again by Peterson and Hogland on November 19, 2002.

BTA did not satisfy the stipulation agreement condition requiring it to provide a commitment letter within the agreed-upon 60 day time period. Hogland agreed to grant an extension to BTA. On January 22, 2003, the parties entered into an addendum to the stipulation agreement, which extended the time by which BTA was required to provide a commitment letter to February 4, 2003. BTA failed to provide a commitment letter to Hogland by that date.

On February 11, 2003, Hogland notified BTA that its permit had expired because BTA failed to meet its obligations under the stipulation agreement and addendum. BTA requested a hearing on the matter and Hogland allegedly denied the request.

On February 19, 2003, BTA sent a letter to Hogland and the City of Boise, requesting an appeal to the Board of Appeals pursuant to Boise Municipal Code § 4-02-05 and UBC § 105.1. The letter stated that in the event the Board of Appeals did not have jurisdiction to hear the matter, the letter was to be considered notice that BTA was appealing to the City Council. The record reflects that the Board of Appeals did not hear the matter, although it is unclear why that procedure was not followed. Rather, a hearing on the matter was conducted before the City Council on April 1, 2003. At that hearing, BTA was represented by counsel and was allowed to present testimony and offer evidence. After the City Council heard BTA's evidence, it found that Hogland mistakenly calculated BTA's permit expiration date. The City Council reinstated BTA's permit on April 9, 2003.

BTA filed a complaint against Hogland and the City of Boise on November 2, 2004, claiming that negative publicity from the miscalculation of the expiration date of the building permit led to cancellation of a number of pre-sale condominium purchase agreements and caused the withdrawal of financing commitments, ultimately leading to the Project's failure. BTA brought various causes of action, including in relevant part: (1) intentional interference with contract and intentional interference with prospective economic gain, (2) vicarious liability of the City of Boise for Hogland's tortious actions, (3) violation of 42 U.S.C. § 1983 by Hogland and the City of Boise, (4) a regulatory taking without just compensation by the City of Boise in

violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Sections 13 and 14 of the Idaho Constitution, and (5) violation of BTA's procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution and Article 1, Section 13 of the Idaho Constitution.

Hogland and the City of Boise filed an answer, raising various affirmative defenses, including that "some or all [state law] claims are either barred or limited by the Idaho Tort Claims Act." The record is unclear whether BTA complied with the notice provisions of the Idaho Tort Claims Act.

During the course of preparing for litigation, Hogland stated in an affidavit that he was "concerned about the safety of the BTA construction site because it was an open pit in the middle of downtown Boise." He stated that he issued the stop-work order because he believed BTA's permit had expired and his actions "were intended to address what [he] believed to be the significant risk to the public and adjacent buildings of the site, given the width and depth of the excavated pit and exposed reinforcing bar, foundation, and concrete columns."

The parties filed cross-motions for summary judgment. The district court granted summary judgment on BTA's § 1983 claim in favor of the City of Boise, finding that it was immune from suit, and Hogland, finding that he was entitled to qualified immunity. The court did not address the takings or tort claims in its summary judgment order. The court denied Hogland and the City of Boise's request for attorney fees and granted their motion for costs.

BTA filed a timely appeal raising the following issues: (1) whether Hogland acted *ultra vires* in entering into the stipulation agreement and whether it is void for lack of consideration, (2) whether Hogland and the City of Boise violated BTA's procedural due process rights and are liable under 42 U.S.C. § 1983, (3) whether questions of fact preclude summary judgment on BTA's takings claims, and (4) whether questions of fact preclude summary judgment on BTA's tort claims against Hogland.

Hogland and the City of Boise filed a timely cross-appeal on the issue of attorney fees below and request costs and fees on appeal.

## ISSUES ON APPEAL

Appellant raises the following issues on appeal:

1. Whether Hogland acted *ultra vires* in entering into the stipulation agreement and whether it is void for lack of consideration?

4

2. Whether Hogland and the City of Boise violated BTA's procedural due process rights and are liable under 42 U.S.C. § 1983?
3. Whether the district court properly granted summary judgment on BTA's takings claims?
4. Whether the district court properly granted summary judgment on BTA's tort claims against Hogland?

Respondents raise the issue of whether the district court abused its discretion in denying Respondents' motion for attorney fees below. Respondents request attorney fees on appeal.

## STANDARD OF REVIEW

On appeal from the grant of a motion for summary judgment, this Court's standard of review is the same as the standard used by the district court originally ruling on the motion. *P.O. Ventures, Inc. v. Loucks Family Irrevocable Trust*, 144 Idaho 233, 237, 159 P.3d 870, 874 (2007). Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c).

The burden of establishing the absence of a genuine issue of material fact is on the moving party. *Porter v. Bassett*, 146 Idaho 399, __, 195 P.3d 1212, 1216 (2008). However, if the nonmoving party fails to provide a sufficient showing to establish the essential elements of his or her case, judgment shall be granted to the moving party. *Id*. This Court will liberally construe all disputed facts in favor of the nonmoving party, and all reasonable inferences that can be drawn from the record will be drawn in favor of the nonmoving party. *Id*. If reasonable persons could reach differing conclusions or draw conflicting inferences from the evidence presented, then summary judgment is improper. *Jones v. HealthSouth Treasure Valley Hosp.*, 147 Idaho 109, __, 206 P.3d 473, 476 (2009).

## ANALYSIS

**Hogland did not act *ultra vires* when he entered into the stipulation agreement, nor is the agreement void for lack of consideration.**

BTA argues the condition in the stipulation agreement requiring Hogland to approve financing for the Project exceeded the authority granted to Hogland under the UBC and Hogland was therefore acting *ultra vires* when he entered into the agreement with BTA's representatives. To succeed on an *ultra vires* argument, BTA must show that Hogland exceeded the broad discretion and authority granted to him to direct and enforce all provisions of the UBC. See *Black v. Young*, 122 Idaho 302, 834 P.2d 304 (1992). BTA compares the facts of the present

case to *Black*, where the City of Ketchum imposed conditions upon an agreement between developers and the city council to enact an ordinance vacating a public alley for the purpose of building a hotel. *Id*. This Court found the ordinance invalid as the conditions exceeded the authority the city was granted through I.C. § 50-311, which specifically governed the process whereby streets were vacated. *Id*. at 308, 834 P.2d at 310. *Black* is distinguishable from the present case because there the city's authority was limited to the processes set out in the statute for vacating streets and alleys. *Id*. In the present case, Hogland's authority was not narrowly circumscribed; rather, he had broad discretion to direct and enforce all provisions of the UBC.

Hogland derived his authority to enter into the stipulation agreement from the powers granted to him in the UBC to "render interpretations of [the] code and to adopt and enforce rules and supplemental regulations in order to clarify the application of its provisions," UBC § 104.2.1, and to "institute any other appropriate action to prevent, restrain, correct or abate" a safety violation. UBC § 102. Hogland described in an affidavit that he was concerned about the hazard of the open construction site, as well as BTA's demonstrated continuous failure to meet the conditions of its permit and proceed with work in a timely manner. Hogland could have declared the Project an unsafe structure and required BTA to repair, demolish, or remove the structure. *See* UBC § 102. Rather than do so, Hogland attempted to cure BTA's violations by entering into a stipulation agreement whereby the City of Boise would receive assurances that the structure was safe and work on the Project could progress in a timely fashion. Hogland was acting well within his authority when he and BTA agreed to certain conditions that permitted BTA extra time to obtain financing while ensuring that BTA would not continue to unreasonably delay the Project and create hazardous conditions at the job site. Accordingly, we hold that Hogland was not acting *ultra vires*.

BTA also argues the stipulation agreement is void for lack of consideration. While this Court will not inquire as to the adequacy of consideration as bargained for by parties to an agreement, some consideration is a necessary element to a contract. *Vance v. Connell*, 96 Idaho 417, 419, 529 P.2d 1289, 1291 (1974). "To constitute consideration, a performance or a return promise must be bargained for. A performance or return promise is bargained for if it is sought by the promisor in exchange for his promise and is given by the promisee in exchange for that promise." Restatement (Second) of Contracts § 71 (1981). The stipulation agreement and addendum were negotiated between Peterson, his attorney, and Hogland, and both agreements

6

include changes specifically proposed by BTA. Hogland and the City of Boise gave up other actions they could have taken to correct safety hazards in the Project site, and conversely, BTA received the benefit of Hogland not finding BTA in violation of the UBC. We hold that the stipulation agreement is not void for lack of consideration.

**Hogland and the City of Boise did not violate BTA's procedural due process rights, so they are not liable under 42 U.S.C. § 1983.**

BTA argues its procedural due process rights were violated because it was not afforded a pre-deprivation hearing prior to Hogland (1) issuing the stop-work order, or (2) mistakenly deeming the building permit expired.[1] Specifically, BTA claims Hogland and the City of Boise violated its constitutional right to due process and are liable under 42 U.S.C. § 1983, which provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

To invoke § 1983, a plaintiff must show a violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a person acting under color of state law. *Aberdeen-Springfield Canal Co. v. Peiper*, 133 Idaho 82, 92, 982 P.2d 917, 927 (1999). The right to procedural due process is secured by the Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, and by Article 1, Section 13 of the Idaho Constitution. Procedural due process protects the minimum guarantees of notice and a hearing where deprivation of a property interest may occur. See *Bradbury v. Idaho Judicial Council*, 136 Idaho 63, 72, 28 P.3d 1006, 1015 (2001). The opportunity to be heard must occur at a meaningful time and in a meaningful manner. *Id*. The United States Supreme Court explained the balancing test to determine the adequacy of a particular process as follows:

> [D]ue process…is not a technical conception with a fixed content unrelated to time, place and circumstances...[D]ue process is flexible and calls for such procedural protections as the particular situation demands…[I]dentification of the

---

[1] We do not need to decide whether BTA had a constitutionally protected property right in its building permit because, assuming *arguendo* that the permit was a protected property interest, we hold BTA was afforded adequate procedural due process.

specific dictates of due process generally requires consideration of three distinct factors: [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge,* 424 U.S. 319, 334-35 (1976) (internal quotations and citations omitted). The United States Supreme Court has rejected the notion that a pre-deprivation hearing is required in all cases. *Parratt v. Taylor*, 451 U.S. 527, 540 (1981) (overruled on other grounds). Interim suspensions of licenses and temporary seizures of property may be undertaken without a pre-deprivation hearing, provided there is sufficient factual basis for the action and that prompt administrative or judicial review of the merits of the decision is available. See *Barry v. Barchi*, 443 U.S. 55, 64 (1979).

Hogland's decision to issue the stop-work order was merely a temporary suspension of BTA's right to perform work on the Project. There was sufficient factual basis for the suspension because PDS's records reflected that work had not been performed in the 180-day period. Prompt review was available to BTA in the forms of a meeting with Hogland and a hearing before the Board of Appeals, although in this case the City Council conducted the hearing. Under *Parratt* and *Barry*, Hogland's decision to issue the temporary stop-work order did not invoke the right to a pre-deprivation hearing.

BTA's argument that it was entitled to a pre-deprivation hearing before the stop-work order was issued also fails under the *Mathews* balancing test. First, the private interest that was affected by the official action was minor because the decision to issue the stop-work order was merely intermittent until a course of action could be agreed upon by the parties. Second, the risk of erroneous deprivation was minimal because of the temporary nature of the action. The value of additional procedural safeguards would also have been minimal because the benefits would have been lost if additional processes were put in place to stall the use of the stop-work order, which is a measure used to swiftly abate unsafe work from being performed. Third, the additional financial and administrative burdens placed on the government would be arduous if additional procedural requirements were imposed before stop-work orders could be issued, particularly due to the temporary nature of stop-work orders. Under the *Mathews* balancing test, BTA was not entitled to notice and a hearing prior to Hogland issuing the stop-work order.

8

The thornier question is whether BTA was afforded adequate procedural due process under *Mathews* when Hogland and the City of Boise mistakenly deemed BTA's building permit expired. In its summary judgment order, the district court incorrectly stated, "Neither the Boise City Code nor the UBC provided for an immediate appeal following an expiration of a permit." The court then noted that "a builder who disagreed with the actions of Hogland had remedial options by seeking an appeal through the Boise City Council, which BTA did. Of course this was not specifically spelled out but it was a viable option for BTA."

Despite what the district court stated, the UBC clearly provides for an appeals process from any final decision made by the building official, in this case Hogland, to a Board of Appeals. The relevant section states:

> In order to hear and decide appeals of orders, decisions or determinations made by the building official relative to the application and interpretation of this code, there shall be and is hereby created a board of appeals consisting of members who are qualified by experience and training to pass on matters pertaining to building construction...The board of appeals shall be appointed by the governing body and shall hold office at its pleasure. The board shall adopt rules of procedure for conducting its business, and shall render all decisions and findings in writing to the appellant with a duplicate copy to the building official.

UBC § 105.1. The record shows that BTA requested an appeal before the Board of Appeals under UBC § 105.1, but BTA did not receive such a hearing. Rather, BTA's appeal went directly to the Boise City Council. During the hearing before the City Council, BTA was represented by counsel and allowed to present evidence. The record does not explain why BTA's appeal was heard by the City Council rather than the Board of Appeals. Regardless of who heard BTA's appeal, the question before us is whether the process afforded to BTA was constitutionally adequate.

Under the *Mathews* balancing test, BTA received constitutionally adequate procedural due process in the form of notice and a hearing when it appealed to the City Council. First, assuming *arguendo* that BTA had a constitutionally protected property right in its building permit, we recognize that it is imperative that we protect parties from suffering constitutional violations pertaining to such a right. Second, although there was a risk of erroneous deprivation of BTA's property interest, as shown by Hogland's mistaken miscalculation of the permit expiration date, any deprivation was cured by the City Council's decision to reinstate the permit. There would have been minimal value in additional or substitute safeguards because the City

Council did exactly what BTA had hoped for in appealing Hogland's decision – they reinstated BTA's permit. Third, creating additional or substitute procedural requirements would have resulted in onerous fiscal and administrative burdens where there was already an appeals process in place. In this case, to create a more complex process would have been overly burdensome and superfluous when the procedure in place was clearly adequate. Thus, we hold that BTA was afforded adequate procedural due process with regard to any property rights it may have had in its building permit.

We note that the district court below found that there was an issue of fact as to whether there was a procedural due process violation, but it held that if there was a violation, the right at issue was not clearly established and Hogland was therefore entitled to qualified immunity. See *Pearson v. Callahan*, __ U.S. __ (2009) (holding the test to determine whether a government official is entitled to qualified immunity, promulgated in *Saucier v. Katz*, 533 U.S. 194 (2001), need not be analyzed in a particular order; the two-prong test is: 1) whether the facts the plaintiff alleges make out a violation of a constitutional right; and 2) whether the right at issue was clearly established at the time of defendant's conduct). The court also found that the City of Boise was not liable for Hogland's actions because he was not a final policymaker. See *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658 (1978) (holding a plaintiff may establish municipal liability by showing that the decision-making official had final policymaking authority). Because we find there was no deprivation of BTA's procedural due process rights, we do not reach the issues of whether Hogland was entitled to qualified immunity or whether he was a final policymaker rendering the City of Boise liable for his actions. Although we disagree with the district court's reasoning, we agree with its decision to grant summary judgment to Hogland and the City of Boise. Where the lower court reaches the correct result by an erroneous theory, this Court will affirm the order on the correct theory. *Nampa & Meridian Irr. Dist. v. Mussell*, 139 Idaho 28, 33, 72 P.3d 868, 873 (2003). For the reasons stated above, we hold that the district court did not err when it granted summary judgment and dismissed BTA's § 1983 claim because BTA's procedural due process rights were not violated under the United States or Idaho constitutions.

**The district court erred in failing to address BTA's takings claims, so we remand for further proceedings.**

BTA alleges that it was deprived of two pieces of property – the building permit itself and BTA's right to develop the Project pursuant to the permit – resulting in constitutionally impermissible takings under the Fifth and Fourteenth Amendments to the United States Constitution, and Article I, Sections 13 and 14 of the Idaho Constitution. Although BTA asserted its takings claims in its complaint, the district court failed to address the claims in its Decision and Order on Cross Motions for Summary Judgment.

The Fifth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, provides that no person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." Article I, Section 13 of the Idaho Constitution guarantees that "[n]o person shall be…deprived of life, liberty or property without due process of law." Article I, Section 14 of the Idaho Constitution provides: "Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor."

The Just Compensation Clause, sometimes referred to as the Takings Clause, has developed into a complicated and multi-faceted area of constitutional law. Until the United States Supreme Court's watershed decision in *Pennsylvania Coal Co. v. Mahon*, 260 U.S. 393 (1922), "it was generally thought that the Takings Clause reached *only* a direct appropriation of property, or the functional equivalent of a practical ouster of the owner's possession."[2] *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 537 (2005) (citing *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1014 (1992) (internal quotations and brackets omitted; emphasis in original)). After *Mahon*, neither a physical appropriation nor a public use has ever been a necessary component of a "regulatory taking." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 326 (2002). The United States Supreme Court has identified two types of regulatory action that constitute categorical or *per se* takings. "First, where government requires an owner to suffer a permanent physical invasion of her property – however minor – it must provide just compensation." *Lingle*, 544 U.S. at 538 (citing *Loretto v. Teleprompter Manhattan*

---

[2] BTA's takings claim is alleged in its complaint as a direct governmental appropriation of property without just compensation. According to BTA, "[t]he patently erroneous revocation and/or cancellation of BTA's building permit constituted a taking of BTA's property, without just compensation . . . ." On appeal, however, while still complaining that it was deprived of its property by virtue of a permit revocation, BTA primarily argues its case as a regulatory taking. The offending regulation that would have impinged on BTA's property interest is not specifically identified, although reading between the lines it may be that the stop work order was the offending regulation. Our review assumes that BTA's claim is the regulatory taking type, as its brief devotes the greater part of the takings section to that theory.

11

*CATV Corp.*, 458 U.S. 419 (1982)). "A second categorical rule applies to regulations that completely deprive an owner of '*all* economically beneficial us[e]' of her property." *Lingle*, 544 U.S. at 538 (quoting *Lucas*, 505 U.S. at 1019) (emphasis and bracket in original). If the facts of a regulatory takings case do not fit within these two categories, then the takings claim must be analyzed under the catch-all standard promulgated in *Penn. Central Transp. Co. v. City of New York*, 438 U.S. 104, 124 (1978). The *Penn Central* factors that must be considered to determine the compensability of an alleged taking include: (1) the character of the government action, (2) the economic impact of that action on the property owner, and (3) the extent to which the regulation has interfered with distinct investment-backed expectations. *Id*.

In *Tahoe-Sierra*, the United States Supreme Court held that the *Penn Central* factors are applicable when an alleged taking is temporary in nature. 535 U.S. at 342. In so holding, the Court declined to adopt a *per se* categorical test for temporary moratoriums on development. *Id*. The Court noted: "A rule that required compensation for every delay in the use of property would render routine government processes prohibitively expensive or encourage hasty decisionmaking." *Id*., 535 U.S. at 335. "Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law." *Lingle*, 544 U.S. at 538 (quoting *Mahon*, 260 U.S. at 413).

Assuming *arguendo* that BTA had a constitutionally protected property interest in its building permit or in its right to build pursuant to the building permit, whether a taking occurred was a matter not decided by the district court and for that reason, we decline to address the issue. Accordingly, we vacate the judgment in favor of Hogland and the City of Boise on this issue and remand to the district court for its determination of the issue, keeping in mind that there was at most a temporary taking due to the mistaken miscalculation of the permit expiration date. It is difficult to perceive what loss of value there could have been to the permit itself and a substantial question remains as to what "temporary taking" gives rise to a compensable claim for damages as BTA is asserting here. Because the district court failed to analyze BTA's takings claims or reach any decision on the issue, we remand for further proceedings.

**The district court erred in failing to address BTA's state tort claims, so we remand for further proceedings.**

BTA also asserted claims for intentional interference with contract and prospective economic advantage. In granting summary judgment, the district court failed to address these claims in its decision and we, therefore, decline to address those claims here.

BTA argued below and on appeal that material questions of fact exist on the issues of whether Hogland acted with criminal intent, malice or reckless, willful and wanton conduct in miscalculating the permit expiration date. Specifically, BTA alleges that Hogland intentionally directed BTA to stop work on the Project, Hogland used an invalid excuse that BTA's building permit had expired as a pretext to coerce BTA into signing the stipulation agreement, and Hogland had no lawful authority to impose the conditions of the stipulation agreement on BTA. Since BTA's claim is based on the mistaken miscalculation of a building permit expiration date, the relevant statutory scheme precludes any claim without a showing that Hogland and the City of Boise acted with "malice or criminal intent" or with "gross negligence or reckless, willful and wanton conduct." I.C. § 6-904B(3). The burden is particularly high for BTA, as I.C. § 6-903(e) provides a rebuttable presumption that any act of an employee within the time and place of his employment is without malice or criminal intent. The record does not appear to support BTA's claim, but this is a matter that must be addressed in the first instance by the district court, rather than by this Court. Moreover, the record is unclear whether BTA complied with the Idaho Tort Claims Act notice provisions, which must be resolved by the district court.

For the reasons stated above, we vacate the judgment in favor of Hogland and the City of Boise on this issue and remand this matter, together with BTA's takings claims, to the district court for its determination.

**Respondents are not entitled to attorney fees below or on appeal.**

Respondents argue the district court erred by denying their request for attorney fees m below on the theory that BTA did not suffer the harm it claims because it had financing options available to it that would have allowed the Project to move forward. Following the court's grant of summary judgment, Respondents moved for costs and fees under I.R.C.P. 54(E )(1), 42 U.S.C. § 1983, and I.C. §§ 6-918A and 12-117. The statutory schemes for an award of attorney fees to a defendant under each statute are similar, each essentially requiring a showing that plaintiff's claims are frivolous, unreasonable, groundless, or in bad faith.

"The calculation of reasonable attorney fees is within the discretion of the trial court." *Lettunich v. Lettunich*, 145 Idaho 746, 749, 185 P.3d 258, 261 (2008). "The burden is on the

13

party opposing the award to demonstrate that the district court abused its discretion." *Id.* To determine whether the trial court abused its discretion, we determine: (1) whether the trial court correctly perceived the issue as one of discretion; (2) whether the trial court acted within the outer boundaries of its discretion and consistently with the legal standards applicable to the specific choices available to it; and (3) whether the trial court reached its decision by an exercise of reason. *Id.* Because we remand this case to the district court for consideration of BTA's takings and state tort claims, we hold the district court must reconsider the issue of attorney fees after it determines which party has prevailed.

Respondents also request attorney fees and costs on appeal on the basis that the appeal was brought and maintained frivolously, unreasonably, and without foundation or merit. See I.C. § 12-117. On account of the district court's failure to address BTA's takings and tort claims below, we cannot say that BTA brought this appeal frivolously, unreasonably, or without merit. Thus, we deny Respondents' request for attorney fees on appeal. Costs are awarded to Respondents on appeal.

## CONCLUSION

We affirm in part the district court's decision to grant summary judgment in favor of Hogland and the City of Boise because 1) Hogland did not act *ultra vires* in entering into the stipulation agreement and the agreement is not void for lack of consideration, and 2) Hogland and the City of Boise did not violate BTA's procedural due process rights and are not liable under 42 U.S.C. § 1983. Because the district court failed to address BTA's takings and state tort claims, we vacate the judgment in favor of Hogland and the City of Boise on those issues and remand those issues for further proceedings consistent with this Opinion. Accordingly, the district court must determine attorney fees after it determines which party prevailed. We deny Hogland and the City of Boise's request for attorney fees on appeal. Costs on appeal are awarded to Hogland and the City of Boise.

Justices BURDICK, J. JONES, HORTON and Justice *pro tem* TROUT, **CONCUR**