# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 46186

| | | |
|---|---|---|
| MARIO AYALA, | ) | |
| | ) | |
|    Claimant-Appellant, | ) | |
| | ) | |
| v. | ) | **Boise, May 2019 Term** |
| | ) | |
| ROBERT J. MEYERS FARMS, INC., | ) | **Opinion Filed: July 12, 2019** |
| Employer, and STATE INSURANCE FUND, | ) | |
| Surety, | ) | **Karel A. Lehrman, Clerk** |
| | ) | |
|    Defendants-Respondents. | ) | |
| _____ | ) | |

Appeal from the Idaho State Industrial Commission.

The Idaho State Industrial Commission's findings of fact, conclusions of law and order dated April 9, 2018, order on motion for reconsideration dated June 22, 2018, and order on motion for reconsideration, modification and consolidation dated June 22, 2018 are <u>set aside</u> and this case <u>remanded</u> for a new hearing.

Stephan, Kvanvig, Stone & Trainor, Twin Falls, for appellant. L. Clyel Berry argued.

Augustine Law Offices, PLLC, Boise, for respondents. Paul J. Augustine argued.

_____

BRODY, Justice.

This is a worker's compensation case. Mario Ayala was injured while driving a company truck in 2009, and was injured again in 2013 after falling from a ladder. The Industrial Commission assigned his claims to a referee for a hearing. After the hearing, but before the referee issued "recommended findings and determination" in accordance with Idaho Code section 72-717, the Industrial Commission reassigned the case to itself over Ayala's objection. Citing the referee's backlog of cases and a need for efficiency, the Industrial Commission issued an order finding that Ayala's low-back condition was not causally related to his 2009 truck wreck, that he was not totally and permanently disabled under the odd-lot worker doctrine, and that he suffered disability of 40% of the whole person inclusive of impairment of his 2009 and 2013 industrial accidents. We set aside the Commission's findings of fact, conclusions of law

1

and order because Ayala was denied due process when the Industrial Commission reviewed Ayala's claims and issued a decision without the referee's recommended findings and determination. We also set aside the Industrial Commission's post-hearing order on motion for reconsideration dated June 22, 2018 and order on motion for reconsideration, modification and consolidation dated June 22, 2018 and remand this case for a new hearing.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Mario Ayala was sixty-five years old at the time his worker's compensation claims went to hearing. He was born to a rural family in Mexico in 1951, where he completed only the third grade. At eight-years-old, he dropped out of school to help his father with plowing and caring for animals on a farm. He moved to the United States in 1974 in pursuit of a better life and became a citizen of the United States in 1992. He has lived in Bruneau, Idaho since moving to the states, and has worked primarily on farms. Since 1995, he has worked as a foreman for Meyers Farms on a 1,250 acre tract that produces potatoes, corn, and alfalfa.

In October, 2009, Ayala was driving a work truck to get a replacement part for farm equipment. A tire on the truck blew out, causing the vehicle to swerve back and forth, striking guardrails on both sides of the road. Not wearing a seatbelt, Ayala was thrown about inside of the vehicle and was injured.

Ayala filed a complaint for worker's compensation benefits arising out of the truck wreck in November 2012. There is no dispute that as a result of the collision he sustained injuries to his neck, left shoulder, and left elbow, each of which required surgery. What is in dispute is whether Ayala sustained an injury to his lower back. The State Insurance Fund (SIF) and Meyers Farms claim that, at most, the collision resulted in the temporary aggravation of pre-existing arthritis and that any present need for surgery was not the result of an industrial accident. While Ayala's claim for benefits was pending, he fell from a ladder while working and injured his right knee, requiring him to undergo total knee replacement surgery. He filed another complaint for benefits.

The Industrial Commission assigned Ayala's claims to a referee who then consolidated the matters for hearing. The referee conducted a hearing on October 26, 2016 where Ayala and Morgan Meyers, a principal of the employer, testified. After the hearing was over, the parties, in accordance with Industrial Commission rules of procedure, conducted post-hearing depositions of expert witnesses and submitted final briefing. The referee finally took the matter under advisement on November 3, 2017.

2

About two months later, the Industrial Commission sent a letter to counsel for both parties informing them that the referee was facing a backlog of cases. The letter explained that the Commission was concerned about a delay and was willing to make its decision based on the record adduced. The letter also explained that if the parties were not willing to have the Commissioners do the review without the benefit of the referee's recommendations, the matter would be handled by the referee in due course:

> The Commissioners are concerned about the delay this will cause in getting a decision out. The Commissioners are willing to write this decision on the record adduced to expedite moving this along. If you are willing for the Commissioners to do so, we will reassign the case and will proceed accordingly. If not, resolution of the case will be handled by Referee Powers in due course.

Ayala declined the Commission's offer, with Ayala's lawyer stating in a letter that, "the decision rendered would . . . be absent the consideration of Mr. Ayala's observational credibility which I believe to be an important consideration in this case."

On April 9, 2018, without any recommendations from the referee, the Commission issued a seventy-one page decision on Ayala's claims. Before addressing the merits of Ayala's claims, the decision explained that the Commission's duty to manage a docket in a timely fashion supported its decision to overrule Ayala's objection to the Commission issuing a decision before the referee made recommendations:

> This matter was originally heard by Referee Powers. At the time this matter came under advisement, on November 3, 2017, the assigned Referee faced a significant case backlog that would result in a delay of this decision. In an effort to minimize the anticipated delay, the Commission contacted the parties to suggest that the case be decided on the record by the Commission. The parties responded, stating that due to observational credibility issues relating to Claimant's presentation at hearing, they preferred to have the case decided by the Referee who observed Claimant at hearing. However, as developed *infra*, the outcome in this case does not depend on an assessment of whether Claimant appeared to testify credibly at hearing. It does, to some extent, depend on a comparison of Claimant's testimony, with other evidence of record. While we are sensitive to the desires of the parties, our obligation to manage our docket to promote timely decisions supports assignment of this matter to the Commission.

After the Commission's decision was issued, Ayala filed a Motion for Reconsideration, Motion to Reopen, For Modification of Award upon Consideration of a Change in the Nature or Extent of Claimant's Disablement and/or to Correct a Manifest Injustice; and for Consolidation. In these post-award motions, Ayala requested that a 2017 industrial accident be consolidated

3

with the 2009 and 2013 industrial accidents at issue in the Commission's order. He also requested that his award be modified because the wages he received after the Commission's order were much less than anticipated, causing a significant and substantial change in the nature or extent of his disablement. Ayala also complained of the lack of observational credibility of his testimony before the Commission because they did not have the benefit of receiving recommendations from the referee who conducted the hearing before issuing its findings. And, Ayala asked the Commission to reconsider its analysis regarding the effect of his age under Idaho Code section 72-430.

The Commission denied all of Ayala's motions. In the order denying the motions, the Commission explained that the change in compensation was the loss of a bonus, and Ayala does not explain why he did not receive a bonus. Additionally, the Commission again asserted that observational credibility was not an issue in this case. The Commission explained that while age is a factor to be considered under Idaho Code section 72-430, the statute does not require the Commission to award higher disability in all circumstances merely because a claimant is older. Finally, the Commission decided that there was no basis to reopen the case to correct a manifest injustice due to Ayala's changed circumstances with the new injury and less pay, because it concluded that a claimant must show a change in the nature and extent of his physical injury to successfully pursue a claim under Idaho code section 72-719(1)(a).

Ayala timely appealed.

## II. STANDARD OF REVIEW

"When reviewing a decision by the Industrial Commission, this Court exercises free review over the Commission's conclusions of law, but will not disturb the Commission's factual findings if they are supported by substantial and competent evidence." *Aguilar v. Indus. Special Indem. Fund*, No. 45581, 2019 WL 1187120, at *4 (Idaho Mar. 14, 2019) (citing *Green v. Green*, 160 Idaho 275, 280, 371 P.3d 329, 334 (2016)).

> Substantial and competent evidence is relevant evidence that a reasonable mind may accept to support a conclusion. Substantial and competent evidence is more than a scintilla of evidence, but less than a preponderance. [This Court] will not disturb the Commission's conclusions on the weight and credibility of the evidence unless those conclusions are clearly erroneous.

4

*Id.* (citing *Hope v. Indus. Special Indem. Fund*, 157 Idaho 567, 570–71, 338 P.3d 546, 549–50 (2014)). "This Court freely reviews the Commission's interpretation of the workers' compensation statutes." *Id.*

"A claimant has the burden of proving a probable, not merely a possible, causal connection between the employment and the injury or disease." *Reyes v. Idaho Supreme Potatoes*, 133 Idaho 385, 386, 987 P.2d 297, 298 (1999) (quoting *Beardsley v. Idaho Forest Indus.*, 127 Idaho 404, 406, 901 P.2d 511, 513 (1995)). All facts and inferences are viewed "in the light most favorable to the party who prevailed before the Commission and [this Court] liberally construes the provisions of the worker's compensation law in favor of the employee, in order to serve the humane purpose for which the law was promulgated." *Hamilton v. Alpha Servs., LLC*, 158 Idaho 683, 688, 351 P.3d 611, 616 (2015) (internal citations omitted). This Court will not reweigh the evidence or consider whether it would have reached a different conclusion than the Commission from the evidence presented. *Eacret v. Clearwater Forest Indus.*, 136 Idaho 733, 735, 40 P.3d 91, 93 (2002).

### III. ANALYSIS

**A. The Commission violated Ayala's due process right to a fair hearing by issuing an order without reviewing findings and determinations from the referee.**

Ayala argues that the Commission erred by issuing an opinion without recommended findings and determinations from the referee and that it acted in excess of the statutory authority granted to it in Idaho Code section 72-717. SIF, on the other hand, argues that Idaho Code section 72-717 authorizes the Commission to either adopt or reject a referee's findings, so it is immaterial that the referee did not prepare such findings. SIF also contends that Ayala received due process in the hearing before the referee, and the hearing was recorded in a transcript for the Commission to review. We hold that the Commission violated Ayala's due process right to a fair hearing.

Even though the Idaho Industrial Commission is an administrative agency situated within the executive department of our state government, the commissioners exercise judicial functions in their role as adjudicators of private disputes between workers and their employers and sureties. *See, e.g.,* I.C. § 72-501(5) ("As an official exercising judicial functions, [a member of the commission] shall not engage in partisan political activities and shall conform his conduct to commonly acceptable standards of judicial ethics."). Arthur Larson in his leading treatise on

worker's compensation law explained that, "in the spectrum of administrative agencies . . . the compensation commission . . . while deciding controverted claims . . . is as far towards the judicial end of the spectrum as it is possible to go without being an outright court." Arthur Larson, Workers' Compensation, § 79:90 (Desk ed. 2000). The Commission, as part of its many duties and responsibilities, is authorized to adopt rules and regulations governing judicial matters. I.C. § 72-508. Much like this Court has adopted the Idaho Rules of Civil Procedure, the Commission has adopted the Judicial Rules of Practice and Procedure (JRP) to protect the rights of the parties from the time a worker's compensation complaint is filed until a decision is rendered.

Section 72-506(1) of the Idaho Code authorizes the Commission to appoint a referee to conduct hearings on its behalf:

> Any investigation, inquiry or hearing which the commission has power to undertake or hold may be undertaken or held by or before any member thereof or any hearing officer, referee or examiner appointed by the commissioner.

I.C. § 72-506(1). JRP Rule 10 also provides that "[h]earings are held by one or more Commissioners or a Referee appointed by the Commission."

The parties' main contention in this case centers on the relationship between a referee and the Commission. Section 72-717 governs the Commission's review of a claim where the hearing has been conducted by a referee. The statute states that if a matter is assigned to a referee, the record of that hearing together with the referee's "recommended findings and determination" *shall* be submitted to the Commission for its review:

> If the matter has been assigned for hearing by a member, hearing officer, referee, or examiner, the record of such hearing, together with the recommended findings and determination, shall be submitted to the commission for its review and decision.

I.C. § 72-717. If the Commission approves and confirms a referee's decision, then the referee's decision becomes the decision of the Commission:

> Every finding, order, decision or award made by any . . . referee . . . pursuant to such . . . hearing, when approved and confirmed by the commission, and ordered filed in its office, shall be deemed to be the finding, order, decision or award of the commission.

I.C. § 72-506(2).

Ayala claims that section 72-717 mandates that the Commission have a referee's recommended findings and determination before it reviews the hearing record and makes its decision. SIF responds that, pursuant to Idaho Code section 75-506(2), any findings of fact made by a referee are only recommendations, which the Commission may either reject or deny at its discretion. This Court has confirmed this interpretation by stating, "The findings of fact made by [a] referee [are] merely recommendations to the Industrial Commission. Upon reviewing those findings, it could either adopt them or enter its own findings." *Lorca-Merono v. Yokes Washington Foods, Inc.*, 137 Idaho 446, 451, 50 P.3d 461, 466 (2002). Additionally, this Court has held that the Commission does not even need to explain why it did not adopt certain recommendations made by a referee and that the Commission ultimately decides what weight may be given to certain facts or experts. *Id.* Thus, the position of the SIF is that "[i]t is immaterial that the referee did not prepare recommended findings of fact and conclusions of law because the Commission could have disregarded them and reached its own findings and conclusions . . . ." SIF's argument goes too far.

To begin with, SIF's argument undermines the vital role that referees play in the adjudicatory process. The referee is typically assigned a case at the time the complaint is filed and handles all of the pre-hearing motions that arise. During the life of the claim, the referee becomes familiar with the parties, the issues, and the evidence in a way that the Commission, which functions much more like an appellate court in a case where a referee has been assigned, simply cannot. The referee is the eyes and ears of the Commission, and like a trial judge, is the person best-situated to make recommended findings of fact and a determination. While we recognize the Industrial Commission does not have an obligation to accept a referee's recommendations, section 72-717 makes it clear that the Commission does have an obligation to have those recommendations in hand before reviewing the case and making a decision. The referee's recommendations may contain important insight and conclusions that the Commission would otherwise miss.

Adopting SIF's position would also impair this Court's review of Commission decisions. The Supreme Court of the United States recognized nearly seventy years ago that a referee's findings play an important role in determining whether there is substantial and competent evidence to support a decision-making board's conclusions. In *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474 (1951), the U.S. Supreme Court explained:

7

We do not require that the examiner's findings be given more weight than in reason and in the light of judicial experience they deserve. The 'substantial evidence' standard is not modified in any way when the Board and its examiner disagree. *We intend only to recognize that evidence supporting a conclusion may be less substantial when an impartial, experienced examiner who has observed the witnesses and lived with the case has drawn conclusions different from the Board's than when he has reached the same conclusion. The findings of the examiner are to be considered along with the consistency and inherent probability of testimony. The significance of his report, of course, depends largely on the importance of credibility in the particular case. To give it this significance does not seem to us materially more difficult than to heed the other factors which in sum determine whether evidence is 'substantial.'*

*Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 496–97 (1951) (emphasis added). We are persuaded by this reasoning. When taking up a worker's compensation case, this Court must have a complete record, including the referee's recommended findings of fact and determinations, in order to do a meaningful review. While the significance we attach to the referee's recommendations will vary from case to case, there is simply no justification for failing to have those recommendations in the record.

Due process and the plain language of Idaho Code section 72-717 demand that the referee's recommended findings of fact and determination be reviewed by the Commission when a hearing has been conducted. A hearing is not a mere formality—it is an integral component of due process because it provides a claimant with an opportunity to be heard in a meaningful time and in a meaningful manner. *See Floyd*, 164 Idaho at ____, 434 P.3d at 1270. However, due process is not a rigid concept—"the protections and safeguards necessary vary according to the situation." *Meyers v. Hansen*, 148 Idaho 283, 292, 221 P.3d 81, 90 (2009). In *Boise Tower Assocs., LLC v. Hogland,* 147 Idaho 774, 215 P.3d 494 (2009), we set forth the U.S. Supreme Court's balancing test that determines the adequacy of a particular process:

Due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances . . . . Due process is flexible and calls for such procedural protections as the particular situation demands . . . . Identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Id.* at 780–81, 215 P.3d at 500–01 (quoting *Mathews v. Eldridge,* 424 U.S. 319, 334–35 (1976) (internal brackets and citations omitted)).

Applying the *Mathews*' balancing test to this case, the Commission violated Ayala's due process right to a meaningful hearing. Ayala has a substantial interest in his worker's compensation claims. As explained above, the risk of an erroneous deprivation of Ayala's interest, while not an absolute certainty, is high because the Commission's decision to reassign the case impairs this Court's obligation to conduct a meaningful review of all issues presented on appeal. There would not have been any additional fiscal burden on the Commission to allow the referee to issue recommendations before the Commission made its decision. The only additional administrative burden would have been the passage of time, which in this case would have been an insignificant burden. The reality is that Ayala's claim had been pending for five years when the referee took the matter under advisement. Why docket management became such a pressing issue two months later when the Industrial Commission reassigned the case to itself over Ayala's objection is something the record simply does not address. While we understand the Commission's need to manage its caseload, the decision to take the reins of this case at that juncture deprived Ayala of a meaningful right to be heard. The Supreme Court of the United States made it clear long ago that government efficiency cannot trump due process:

> The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones.
>
> Procedure by presumption is always cheaper and easier than individualized determination. But when, as here, the procedure forecloses the determinative issues of competence and care, when it explicitly disdains present realities in deference to past formalities, it needlessly risks running roughshod over the important interests of [the individual]. It therefore cannot stand.

*Stanley v. Illinois*, 405 U.S. 645, 656–57 (1972).

On a final note, the Commission presented its decision to adjudicate the matter solely on the record, without hearing live testimony or reviewing a referee's report, as conditional on the approval of both parties. The Commission told Ayala in its January 2018 letter that if he had an

objection to its issuance of a decision based on the record he could make an objection by a specified date and the case would proceed in due course with the referee. Ayala made a timely objection; nonetheless, the Industrial Commission ignored its earlier statement to the parties and issued a decision a few months later without further discussion. The Commission laid out a process for the handling of Ayala's claim and then shifted course without further notice. This is the kind of move that undermines public confidence in a fair and impartial tribunal. Therefore, we set aside the Industrial Commission's order and remand the case for a new hearing.

**B. Ayala is not entitled to attorney fees pursuant to Idaho Code section 72-804.**

Ayala contends that he is entitled to attorney fees pursuant to Idaho Code section 72-804, that states in part, "If the commission or any court before whom any proceedings are brought under this law determines that the employer . . . contested a claim for compensation made by an injured employee . . . without reasonable ground . . . the employer shall pay reasonable attorney fees in addition to the compensation provided by this law." The basis of his claim is that SIF and the employer engaged in "unreasonable and deceptive" conduct in relation to the handling of certain expert witnesses (specifically, the failure to provide certain medical records which Ayala claims were supportive of his claims). We did not reach the merits of Ayala's argument because we determined that the Industrial Commission violated Ayala's due process right. SIF and the employer's decision to defend the Industrial Commission's handling of Ayala's claims was reasonable, and as such, there is no statutory basis to award fees against them. We also decline to award costs pursuant to Rule 40 of the Idaho Appellate Rules.

## IV.    CONCLUSION

In light of the foregoing, the merits of the other issues raised on appeal will not be addressed because any opinion on those matters would be advisory only. The findings of fact, conclusions of law, and order dated April 9, 2018; the order on motion for reconsideration dated June 22, 2018; and the order on motion for reconsideration, modification and consolidation dated June 22, 2018 of the Idaho State Industrial Commission are hereby set aside and this case is remanded for a new hearing.


Chief Justice BURDICK, Justices STEGNER, MOELLER, and Justice Pro Tem WALTERS CONCUR.